2025 IL App (1st) 230750-U

No. 1-23-0750

First Division
August 11, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 21 CH 01526 |
| DIANARA MARTINEZ and KEVIN J. NIELSON[1], | ) ) ) ) | Honorable Celia G. Gamrath, |
| Defendants-Appellants. | ) | Judge, Presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Lavin concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court's grant of summary judgment is affirmed where it correctly found that there was no coverage available under the insurance policy and the circuit court did not abuse its discretion in denying the motion to reopen discovery.

---

[1]Kevin is not a party to this appeal, despite being identified as an appellant in Martinez's notice of appeal.

¶ 2    This appeal arises from an insurance coverage dispute related to an automobile accident occurring on November 4, 2016. Defendant Kevin Nielson, insured by plaintiff-appellee Safeco Insurance Company of Illinois (Safeco), rear-ended a vehicle, which in turn struck defendant-appellant Dianara Martinez's vehicle. After filing an action for declaratory judgment, Safeco filed a motion for summary judgment, and on March 30, 2023, the circuit court granted summary judgment in favor of Safeco. Martinez now appeals from the circuit court's judgment, arguing that the court erred in (1) finding that the "regular use" exclusion of Kevin's Safeco insurance policy was applicable, (2) finding that Safeco was not promptly provided notice of the accident, (3) finding that there was no evidence that Safeco's affidavits were prepared collusively, and (4) refusing to reopen discovery. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On November 4, 2016, Kevin, driving a Nissan Altima in Chicago, Illinois, rear-ended a vehicle driven by Kenneth Paul Doner, causing Doner's vehicle to rear-end another vehicle owned by Martinez and driven by Daniel Martinez, in which Martinez was a passenger. As a result of the collision, Martinez suffered serious injuries.

¶ 5    At the time of the accident, Kevin was insured under an automobile policy with Safeco, with a policy coverage period from September 21, 2016, to March 21, 2017. As of the date of the accident, a 2002 Avalanche was the only covered auto and Kevin was the only driver listed on the policy. Following the accident, in November 2016, the policy was amended to include Katie Muckler Nielson, his wife, as a driver and a 2008 Mazda CX-9 as a covered auto.

¶ 6    The Nissan Altima was never listed as a covered auto on the Safeco policy. Rather, the Altima was owned by Katie and covered by an insurance policy through Progressive Insurance

Company, with a policy coverage period from August 13, 2016, to February 13, 2017. The Progressive policy did not include Kevin as a driver nor the Avalanche as a covered auto.

¶ 7    Kevin's Safeco policy included the following relevant provisions. Part A of the policy provides the Liability Coverage terms, including the following:

"A. We will pay damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted. We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy.

B. "Insured" as used in this Part means:

1. You or any family member for the ownership, maintenance or use of any auto or trailer."

Part A also includes an exclusion which states:

"B. We do not provide Liability Coverage for the ownership, maintenance or use of:

***

2. Any vehicle, other than **your covered auto**, which is:

a. owned by you; or

b. furnished or available for your regular use." (Emphasis original.)

Part E provides the Duties After an Accident or Loss, stating, in pertinent part, as follows:

"We have no duty to provide coverage under this policy unless there has been full compliance with the following duties:

A. We must be notified promptly of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss."

¶ 8    On October 18, 2018, Martinez initiated a lawsuit in the circuit court of Cook County against Kevin and Doner[2] (*Dianara Martinez v. Kevin Nielson, et al.*, No. 2018 L 011320) ("underlying lawsuit").

¶ 9    On October 10, 2019, Progressive tendered its policy limit of $25,000 to Martinez. On October 17, 2019, Progressive notified Safeco, via e-mail, of the accident and the underlying lawsuit. On October 30, 2019, Safeco sent a letter to Kevin, acknowledging the accident and the underlying lawsuit and informing him that there would be no coverage because of the "regular use" exclusion in the Safeco policy. On November 6, 2019, Martinez's counsel sent a letter to Safeco demanding the policy limits for Martinez's claim. On December 11, 2019, Safeco responded, stating that it could not extend an offer to Martinez because there was no coverage available.

¶ 10    On March 31, 2021, Safeco initiated a declaratory judgment action, the subject of this appeal, naming as defendants, Kevin and Martinez ("declaratory judgment action"). The

---

[2]Doner was subsequently dismissed from the underlying lawsuit.

declaratory judgment action sought a declaration that no coverage was available under Kevin's Safeco policy pursuant to the "regular use" exclusion and the notice provision contained therein.

¶ 11    In June 2021, Martinez and Kevin executed a release and settlement agreement ("settlement agreement"). As part of the settlement agreement, Martinez received $25,000 from Progressive. Additionally, Kevin consented to a $475,000 settlement of Martinez's claim with an assignment of rights to Martinez against Safeco, in return for a covenant by Martinez that she would not sue the Nielsons and only seek the settlement amount from Safeco. Consequently, on September 28, 2021, the circuit court entered an order, dismissing the underlying lawsuit with prejudice.

¶ 12    On June 29, 2021, after the settlement agreement had been executed, Martinez filed her answer and counterclaim in the declaratory judgment action. Therein, Martinez sought a judgment declaring that Safeco owed a duty to Kevin to defend and indemnify an auto accident and must fund the settlement agreement in the amount of $475,000.

¶ 13    For several months in 2022, the declaratory judgment action proceeded with prolonged discovery litigation. Relevant to this case, on April 14, 2022, Martinez issued a notice of deposition to Safeco's claims adjuster. On May 2, 2022, Safeco filed a motion to quash that notice of deposition, arguing that it was not relevant to the issues in the action. On May 17, 2022, the circuit court entered an order, granting Safeco's motion to quash. On June 7, 2022, Safeco provided responses to Martinez's requests for production stating that it would provide Martinez with the Nielsons' affidavits dated May 23, 2022. During this time period, Safeco filed multiple motions to compel against Martinez and the court repeatedly extended the discovery deadlines. Finally, on September 29, 2022, the court entered an order closing discovery.

¶ 14    On October 20, 2022, Safeco filed a motion for summary judgment, alleging that it had no duty to defend or indemnify Nielson, based on the "regular use" exclusion contained in the policy and Safeco's lack of notice of the accident and lawsuit. Attached to the motion, *inter alia*, were separate affidavits from Kevin and Katie Nielson.

¶ 15    The affidavits contained the following attestations. Kevin and Katie married on June 26, 2015, and they were living together at the time of the accident. Katie was the sole owner of the Altima and Kevin was the sole owner of the Avalanche. There was a single set of keys to the Altima which Katie and Kevin shared. Kevin would drive the Altima to work about two days per week, they would switch vehicles regularly, and both vehicles were available for either of them to use. They treated the vehicles as shared but maintained separate insurance policies. Kevin did not need Katie's permission to use the Altima and there were no limitations placed on when Kevin could use the Altima. In Kevin's affidavit, he also averred that he did not notify Safeco of the accident and underlying lawsuit because the Altima was covered under a policy with Progressive and Progressive defended him in the underlying lawsuit.

¶ 16    On November 22, 2022, Martinez filed her response to the summary judgment motion. At the same time, Martinez also filed a motion requesting that the court reopen discovery. On November 29, 2022, Safeco filed a motion to strike Martinez's motion to reopen discovery. On December 5, 2022, the court entered an order granting Safeco's motion to strike, denying Martinez's motion to reopen discovery, and granting Safeco an extension to file its reply. On December 27, 2022, Safeco filed its reply.

¶ 17    On March 30, 2023, the circuit court granted Safeco's motion for summary judgment, finding that there was no coverage available to Kevin or Martinez because Kevin was driving a vehicle that was not his covered auto and which was furnished or available for his regular use and

also because Kevin violated the notice requirements of his Safeco policy. The court also stated that Martinez's "reliance on unsupported allegations and conjecture is not sufficient to preclude summary judgment." Therefore, the court entered judgment in favor of Safeco on all counts in its declaratory judgment complaint and against Martinez on all counts in her counterclaim.

¶ 18    This appeal followed.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, Martinez argues that the court erred in (1) finding that the "regular use" exclusion of Kevin's Safeco insurance policy applied to the circumstances, (2) finding that Safeco was not promptly provided notice of the accident, (3) finding that there was no evidence that Safeco's affidavits were prepared collusively, and (4) refusing to reopen discovery.

¶ 21    Preliminarily, we address Safeco's assertion that Martinez's brief contains several misrepresentations and statements not supported by the record on appeal. Illinois Supreme Court Rule 341(h)(6) provides that a statement of facts must contain those facts necessary "to an understanding of the case, stated accurately and fairly without argument or comment, and with appropriate reference to the pages of the record on appeal[.]" Ill. S. Ct. R. 341(h)(6) (eff. Oct. 1, 2020). We agree with Safeco and find that Martinez's statement of facts section contains multiple statements that are either argumentative or misrepresentations of the facts without any citation to the record in violation of the rule. Compliance with the rules governing appellate briefs is mandatory. *McCann v. Dart*, 2015 IL App (1st) 141291, ¶ 12. This court may, in its discretion, strike a party's noncompliant brief or, in cases of serious rule violations, dismiss an appeal. *Collier v. Avis Rent A Car System, Inc.*, 248 Ill. App. 3d 1088, 1095 (1993). However, "[w]here violations of supreme court rules are not so flagrant as to hinder or preclude review, the striking of a brief in whole or in part may be unwarranted." *Merrifield v. Illinois State Police Merit Board*, 294 Ill. App.

3d 520, 527 (1997). After reviewing Martinez's statement of facts and the record, we conclude that any misleading statements lacking citation to the record do not hinder our review of the merits of this appeal. Although we elect not to strike Martinez's statement of facts or her brief, we will disregard any portions of her brief in contravention of our supreme court rules. We now turn to the primary issue in this appeal: whether the circuit court properly granted summary judgment in favor of Safeco.

¶ 22    Summary judgment is appropriate when " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Suburban Real Estate Services, Inc. v. Carlson*, 2022 IL 126935, ¶ 15 (quoting 735 ILCS 5/2-1005(c) (West 2018)). In ruling on a motion for summary judgment, the court must view all evidence submitted in the light most favorable to the non-moving party. *Soderlund Bros., Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 614 (1995). "Summary judgment is a drastic measure and should only be granted if the movant's right to judgment is clear and free from doubt." *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Sorce v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). Our review of the court's decision granting summary judgment is *de novo*. *Kuhn v. Owners Insurance Company*, 2024 IL 129895, ¶ 14. The interpretation of an insurance policy, which is a contract, is a question of law also requiring *de novo* review. *Id.*

¶ 23    Martinez first argues that the circuit court erred in finding that the "regular use" exclusion in the Safeco policy applied to Kevin. The rules governing contract interpretation are equally applicable to the interpretation of an insurance policy. *Kuhn*, 2024 IL 129895, ¶ 15. "Our primary objective is to ascertain and give effect to the parties' intent, as expressed in the policy language."

*Id.* Terms in the policy are given their plain and ordinary meaning and are applied as written unless doing so would violate public policy. *Ryan v. State Farm Mutual Auto Insurance Co.*, 397 Ill. App. 3d 48, 51 (2009).

¶ 24    The exclusionary clause upon which Safeco relied in denying coverage to Kevin provides that liability coverage will not be provided for the use of any vehicle, other than Kevin's covered auto, *i.e.*, the Chevrolet Avalanche, which is "furnished or available for your regular use." There can be no doubt that the language in this provision is clear and unambiguous and does not contravene public policy. See *Ryan*, 397 Ill. App. 3d at 51. In fact, as shown below, the provision itself is a common one, as there is an abundance of caselaw construing such an exclusion.

¶ 25    The purpose of this exclusion "is to prevent the insurance company from being subjected to additional risk without receiving an appropriate premium." *Auto Owners Insurance Co. v. Miller*, 138 Ill. 2d 124, 129 (1990). There is no absolute definition for the term "regular use" and, instead, its meaning is dependent on the particular facts and circumstances of each case. *State Farm Mutual Automobile Insurance Co. v. Differding*, 69 Ill. 2d 103, 107 (1977). Our supreme court has stated that, generally, a "regular use" exclusion applies to "frequent, habitual, or principal use" of non-owned vehicles and will not be applied for only isolated or casual use. *Miller*, 138 Ill. 2d at 129. However, because a finding of "regular use" is fact-specific, Illinois caselaw merely provides guidance in analyzing whether the facts and circumstances of the case in question demonstrate the insured's regular use of the non-covered auto. *American Freedom Insurance Co. v. Uriostegui ex rel. Brown*, 366 Ill. App. 3d 1000, 1004 (2006). Where an insurer relies upon an exclusionary clause to deny coverage, "its applicability must be clear and free from doubt because any doubts as to coverage will be resolved in favor of the insured." *International Minerals & Chemical Corp. v. Liberty Mutual Insurance Co.*, 168 Ill. App. 3d 361, 367 (1988).

¶ 26    Given the facts and circumstances of the case before us, we conclude that Safeco affirmatively demonstrated the applicability of the "regular use" exclusion. The facts in this case are not disputed. The Nielsons provided affidavits regarding the use of the Altima, and Martinez did not provide any evidence to rebut their affidavits. Those affidavits state that: the Nielsons were married and live together; the Nielsons considered Kevin's Avalanche and Katie's Altima to be shared vehicles despite maintaining separate insurance; Kevin used the Altima about two days per week to drive to work; Kevin did not need permission from Katie to drive the Altima; and there were no time or location restrictions on when Kevin could use the Altima. In our view, these undisputed facts clearly demonstrate that the Altima was generally available for Kevin's regular, unfettered use, and the following analogous cases interpreting similar "regular use" exclusions support such a finding.

¶ 27    We find *State Farm Mutual Automobile Insurance Co. v. Berke*, 123 Ill. App. 2d 455 (1970), upon which Safeco relies, is "the most factually on-point case." There, the Second District of this court affirmed the trial court's declaratory judgment that liability coverage was not available to the insured, finding that the "regular use" exclusion was applicable to the insured's use of her husband's non-covered vehicle. *Id.* at 459. Admittedly, the Second District was reviewing the trial court's judgment under a more lenient standard (manifest weight of the evidence), but nonetheless, the facts supporting the court's finding are similar. See *id.* In particular, the insured had only used the vehicle on "two or three occasions" but it was available for her use at all times as her husband worked from their home, and there were no restrictions placed on her use. *Id.* at 459. Significantly, the court stated that "if the automobile is available for regular use[,] it is not determinative how often it is in fact used." *Id.* at 460. We find the facts in the instant case even stronger than those in *Berke* where Kevin certainly had driven Katie's vehicle more than a few times, as he attested that

he used it at least twice a week to drive to work, and like the wife in *Berke*, there were no restrictions on his use as it was a household vehicle.

¶ 28    Second, in *State Farm Mutual Automobile Insurance Co. v. Dreher*, 190 Ill. App. 3d 182, 186 (1989), the Third District found that "the uncontested facts indicate [the insured's mother's] car was available to [the insured] for the 'regular and frequent use' and he was permitted to operate her vehicle without restriction or asking for permission." Specifically, the insured used his mother's vehicle for a four-to-five-month period while she baby-sat his child; he did not need to ask permission to use the vehicle; he drove the vehicle two to three times a week, but sometimes daily; and he had 24-hour access to the vehicle when his mother was on vacation. *Id.* at 184. Again, we find the facts in the instant case even stronger than those in *Dreher*, as Katie and Kevin had lived together for some time and considered the Altima a shared, household vehicle, which Kevin could drive at his discretion and without restriction. We disagree with Martinez's contention that *Dreher* is distinguishable because Kevin did not attest that he used the Altima daily. Although Kevin may not have driven it daily, it is clear from the affidavit that the Altima was available for his use without time restrictions.

¶ 29    Third, in *Uriostegui*, 366 Ill. App. 3d at 1001-02, the insured was driving his grandmother's Ford Crown Victoria, which was not identified in his insurance policy, when an accident occurred. The insurance policy, like here, had an exclusionary clause for the "regular use" of a non-covered auto. *Id.* at 1001. The insured testified that he used the vehicle approximately three times a week, he had the keys to the vehicle and was the only driver, and the Crown Victoria was available for his use at any time, including his work commute. *Id.* at 1002-03. This court held that the insured's use constituted "regular use" because permission from his grandmother was not required and there were no time limitations on when it could be used. *Id.* at 1006. Similarly here, Kevin did not have

to ask permission, and Katie placed no restrictions on his use of the Altima. Martinez attempts to distinguish *Uriostegui* on the basis that the insured in that case was effectively the sole driver of the vehicle, whereas, here, Kevin and Katie shared the Altima. However, whether someone is the primary or sole driver is also not determinative of "regular use." For instance, the insured in *Uriostegui* appeared to be the sole driver but the court would have perhaps concluded otherwise had his grandmother required permission for use of the vehicle or restricted the time, duration, or purpose of the vehicle's use. Instead, like Kevin, the insured in *Uriostegui* did not have to ask permission and there were no restrictions on his use.

¶ 30     These analogous cases demonstrate that the frequency of the use is not the most significant factor in determining the applicability of a "regular use" exclusion. Rather, it is the availability of the use that is the most relied upon factor in finding regular use of a non-covered auto. See *Ryan*, 397 Ill. App. 3d at 51 (the exclusion "does not depend on actual use, but on availability"). Kevin attested that he used the Altima about two days per week to drive to work, but he and Katie also stated that they considered their vehicles to be shared, household vehicles and Katie had no restrictions on when Kevin could use the Altima. The Altima was effectively available for Kevin's use at any time, and he was in no way limited to those two days per week for work. See *Economy Fire & Casualty Co. v. Gorman*, 84 Ill. App. 3d 1127, 1129 (1980) ("[t]he courts have no difficulty finding 'regular use' where a car is available for someone's use at any time in his complete discretion"). Following the reasoning in these cases, we must conclude that the "regular use" exclusion applied to Kevin's use of the Altima, and he was not entitled to liability coverage under his Safeco insurance policy.

¶ 31     Nonetheless, Martinez contends that *Illinois Farmers Insurance Co. v. Godwin*, 2022 IL App (3d) 210001, and *Knack v. Phillips*, 134 Ill. App. 3d 117 (1985), both cases where "regular

use" was not found, are factually analogous here. In *Godwin*, the insured was driving his father's Jeep Grand Cherokee when an accident occurred. *Id.* ¶ 3. The insurer instituted a declaratory judgment action, and the circuit court granted summary judgment against the insurer, finding that there was no "regular use" of the Grand Cherokee. *Id.* ¶¶ 1, 14. On appeal, the Third District affirmed, holding that the availability of the non-covered auto was "not so frequent, habitual, or of a principal nature to be deemed 'regular' as a matter of law." *Id.* ¶ 26. The court based its conclusion on the following facts. The insured had his own primary vehicle and alternated residing with his father and his mother, who had separate households, and the Grand Cherokee was the primary vehicle of another member of his father's household. *Id.* ¶ 8. However, the insured's ability to use the Grand Cherokee was contingent upon the insured residing with his father, making a reasonable request for its use, and his father's permission. *Id.* ¶¶ 8, 25. The insured also only actually used the vehicle about once a week. *Id.* ¶ 25. There are clear factual distinctions in the case before us: Kevin did not have to ask Katie's permission, they considered the Altima a shared vehicle, and Kevin used it more than once a week. Thus, we find *Godwin* inapposite.

¶ 32    We also disagree with Martinez that *Knack v. Phillips*, 134 Ill. App. 3d 117 (1985), is supportive. There, the Second District of this court reversed the trial court, finding that the "regular use" exclusion was not applicable because the insured's fiancé loaned the insured his vehicle, over a period of two weeks, for use during the week to commute to her part-time job, but she was not permitted to use the vehicle weekends. *Id.* at 120, 123. The court specifically noted that the duration of this arrangement was never agreed upon and her fiancé regarded the permission to use the vehicle as temporary. *Id.* at 122. The court found these circumstances more consistent with a "limited and casual use" rather than a "regular use." *Id. Knack* is distinguishable from the circumstances here, because, as stated previously, Katie placed no restrictions on Kevin's use of

the Altima and it was considered a shared, household vehicle. The court's reasoning in *Knack* actually reiterates that the frequency of use is not as significant as availability and restrictions. Thus, Martinez's cited authority does not persuade this court that the circuit court's "regular use" finding was in error.

¶ 33 Because the "regular use" exclusion applied to Kevin's use of Katie's Altima, Safeco established that it had no duty to defend or indemnify Kevin. As such, there was no coverage available to Martinez, and the court did not err in granting summary judgment in favor of Safeco and against Martinez on this basis.

¶ 34 Martinez next argues that Safeco was placed on notice of the insurance claim and, therefore, the circuit court erred in finding that no coverage was available. She also contends that Safeco's denial of coverage constituted a breach of its duty to defend and indemnify Kevin and that Safeco was not prejudiced by the delay in notice. Her argument on this point spans one paragraph, is conclusory, and is supported by one citation to authority that is irrelevant to the issue of notice. Rule 341(h)(7) requires arguments "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). "Mere contentions, without argument or citation to authority, do not merit consideration on appeal." *Hall v. Naper Gold Hospitality LLC*, 2012 IL App (2d) 111151, ¶ 12; see *Wolfe v. Menard, Inc.*, 364 Ill. App. 3d 338, 348 (2006) ("A conclusory assertion, without supporting analysis, is not enough."). As such, this argument is forfeited. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited[.]"). Regardless, our conclusion that summary judgment was proper based on the "regular use" exclusion is sufficient to affirm the circuit court's decision that coverage was not available, and it is unnecessary to address the notice

provision. See *Erie Ins. Exchange v. Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 16 (reviewing court may affirm for any basis appearing in the record).

¶ 35    Martinez next challenges the allegedly "collusive" affidavits, arguing that Safeco prepared them for the "explicit purpose of use" in its motion for summary judgment and "[t]he only conceivable reason" why these affidavits were prepared "would be that Safeco intimidated [the Nielsons]" into providing them, "probably with the implicit or explicit threat" to raise their premiums or deny them coverage. She also states, later in her brief, that "it is eminently reasonable to infer and conclude that the documents were procured collusively and mendaciously." These statements are pure speculation with no support in the record to be found, and thus, we will not entertain this argument.

¶ 36    Martinez further contends that she could have inquired as to the facts and circumstances leading to the procurement of the affidavits, and therefore supported her argument, had the court granted her motion to reopen discovery. She also asserts that she was not furnished with complete answers to her written discovery requests and was not given the opportunity to depose the claims adjuster or the Nielsons. Thus, she maintains that the court erred in denying her motion. Because the circuit court has broad discretion as to all discovery matters, we review its decision regarding the reopening of discovery for abuse of discretion. *Wynne v. Loyola University of Chicago*, 318 Ill. App. 3d 443, 455 (2000).

¶ 37    Following our review of the discovery litigation in the record, we conclude that the circuit court did not abuse its discretion in denying the motion to reopen discovery for the following two reasons. First, Martinez concedes that the motion was not accompanied by an affidavit as required under Illinois Supreme Court Rule 191(b). When faced with a motion for summary judgment, Rule 191(b) permits the non-moving party to conduct discovery if the party can demonstrate that the

purported discovery could create a genuine issue of material fact. Ill. S. C. R. 191(b) (eff. Jan. 4, 2013); *Kim v. State Farm Mutual Automobile Insurance Company*, 2021 IL App (1st) 200135, ¶ 58. However, the rule requires that a supporting affidavit from the party must be submitted, stating "specifically what the affiant believes the prospective witness would testify to if sworn and reasons for the affiant's belief." *Giannoble v. P&M Heating & Air Conditioning, Inc.*, 233 Ill. App. 3d 1051, 1065 (1992). "Failure to comply with Rule 191(b) defeats an objection on appeal that insufficient time for discovery was allowed." *Id.* at 1064. Absent the requisite affidavit, we cannot find that the circuit court abused its discretion in denying the motion.

¶ 38      Second, Martinez had ample time to conduct and complete discovery in this case, and any failure to do so can only be attributed to her own lack of diligence. The record shows that the affidavits were provided to Martinez on June 7, 2022, and discovery remained open, after multiple extensions, until September 29, 2022. We can find nothing in the record to explain Martinez's failure to conduct discovery to support her arguments. The circuit court was not persuaded by her last-ditch effort to discover facts and circumstances to defeat Safeco's motion for summary judgment, and Martinez has not provided this court any reason to reach a different decision.

¶ 39      Because the circuit court did not err in finding that no coverage was available by operation of the "regular use" exclusion in the Safeco policy, we conclude that its grant of summary judgment in Safeco's favor was proper. Additionally, the circuit court did not abuse its discretion in denying Martinez's motion to reopen discovery.

¶ 40                                                    III. CONCLUSION

¶ 41      For the reasons stated, we affirm the judgment of the circuit court.

¶ 42      Affirmed.